James J. Weaver and Ora J. Weaver v. Commissioner.
Weaver v. Commissioner
Docket No. 65061.
United States Tax Court
T.C. Memo 1959-199; 1959 Tax Ct. Memo LEXIS 49; 18 T.C.M. (CCH) 888; T.C.M. (RIA) 59199; October 23, 1959
John McCrea, Esq., 24 West King Street, Shippensburg, Pa., for the petitioners. George H. Bowers, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in petitioners' income tax and additions thereto, for the years, and in the amounts as set forth below: Sec. 294
Sec. 294
Year
Deficiency
Sec. 291(a)
Sec. 293(b)
(d)(1)(A)
(d)(2)
1942
$ 1,074.48
$ 268.62
$ 537.24
1943
29.01
7.25
14.51
1944
228.29
57.07
114.15
$ 20.55
$ 13.70
1945
1,043.68
260.92
521.84
93.93
62.62
1946
1947
39.00
9.75
19.50
3.53
2.34
1948
1,697.48
424.37
848.74
152.78
101.85
1949
10,392.08
2,598.02
5,196.04
935.28
632.52
*50 At trial, the Commissioner abandoned his determination of additions to tax for fraud under section 293(b), I.R.C. of 1939. The only issue for decision is whether, in computing petitioners' income on the basis of their net worth plus personal expenditures, the Commissioner properly determined the cost of cattle on hand as of December 31 for each of the years 1941 through 1949. Findings of Fact Petitioners, James J. and Ora J. Weaver, husband and wife, are residents of Orrstown, Pennsylvania. They filed no Federal income tax returns for the years 1942 through 1949. In 1941, petitioners owned some 200 acres of farm land which they operated as dairy farmers. They were also engaged in the livestock and farm equipment business. They continued these lines of endeavor through the years in issue. During each of the years 1941 through 1949, petitioners maintained a dairy herd which consisted of two groups of cattle: (1) those animals which they kept on their own farm, and (2) those animals placed on other farms under oral agreements with other farmers. The second category of animals was referred to as cows "on feed." Petitioners' herd increased through each of the years in issue *51 as a result of births to the herd as well as purchases made by petitioners. Petitioners kept no books or records of their business activities or other income producing transactions during the years in issue. In the absence of books and records the Commissioner determined their income for each of the years 1942 through 1949 on the basis of annual increases in their net worth plus personal living expenses. As part of that net worth computation, the Commissioner determined that for the calendar years ended December 31, 1941 through 1949, petitioners owned cattle having the values set forth below: 1941
1942
1943
1944
1945
1946
1947
1948
1949
Cows,
$1,500
$2,000
$3,000
$4,000
$5,945
$8,145
$10,245
$12,345
$56,000
dairy on
own farm
Cows,
3,740
3,740
3,740
3,740
6,650
9,200
11,275
dairy on
feed
On the assumption that the annual increases in the value of their cattle represented purchases made during each year, the Commissioner proceeded to determine the total increases in petitioners' net worth for the years 1942 through 1949, to which he added their personal expenditures, then reduced the total by an item referred *52 to as "Adjustment of inventories of Cows to 'Farm Price Method'" thereby determining their net income in the manner set forth below: 1942
1943
1944
1945
Increases in net worth:
$ 7,599.82
$ 857.20
$ 4,512.63
$ 7,878.49
Add: Living and personal expenses
1,500.00
1,500.00
1,500.00
1,651.40
Total:
$ 9,099.82
$ 2,357.20
$ 6,012.63
$ 9,529.89
Less: Adjustment of inventories
to "Farm
Price Method"
401.80
471.80
541.80
675.15
Net Income
$ 8,698.02
$ 1,885.40
$ 5,470.83
$ 8,854.74
1946
1947
1948
1949
Increases in net worth:
$ 3,512.96
$ 3,740.80
$14,299.08
$41,142.56
Add: Living and personal expenses
1,786.72
2,286.72
2,286.72
2,286.72
Total:
$ 5,299.68
$ 6,027.52
$16,585.80
$43,429.28
Less: Adjustment of inventories
to "Farm
Price Method"
1,035.65
1,361.15
1,653.40
3,920.00
Net Income
$ 4,264.02
$ 4,666.37
$14,932.40
$39,509.28
In 1941, petitioners' entire herd consisted of 15 animals, 10 cows and 5 heifers. The cows had been purchased by them at a total cost of $1,500, and the heifers they had raised. These 15 head of cattle were maintained by petitioners on their own farm. *53 Petitioners increased their farm herd during each of the years 1942 through 1945 by the addition of animals purchased for the following amounts: 1942
1943
1944
1945
$500
$1,000
$1,000
$1,945
At a conference between petitioners, their counsel, and the internal revenue agents examining petitioners' case, petitioners' counsel, in response to questioning as to the cost of cattle added to the farm herd in 1946 and later years, stated that: "a depreciation basis would be impossible but an inventory amount reflecting a 20% increase in number of cattle and $2,100.00 monetary increase in value of inventory per year would satisfactorily reflect the replacements by heifers and bulls born each year and monetary acquisitions to replace diseased cattle or ones disposed of." With respect to animals "on feed", petitioners submitted information to the examining agents which reflected purchases of cattle added to that herd in each of the years 1942, 1946, 1947, and 1948 as set forth below: 1942
1946
1947
1948
$3,740
$2,910
$2,550
$2,075
In September of 1949, James Weaver submitted a financial statement to a bank in Shippensburg, Pennsylvania, *54 wherein he acknowledged ownership as of that time of 224 head of cattle having a cost basis of $250 per head, or a total value of $56,000. During 1948, petitioners deposited a total of $206,816.55 in various bank accounts which they maintained, which represented the proceeds of discounted notes, sale of cattle, milk checks, and various other transactions. Ultimate Finding of Fact Petitioners expended the following amounts on purchases of cattle during each of the years in issue: 1942
1943
1944
1945
1946
1947
1948
1949
On own farm
$ 500
$1,000
$1,000
$1,945
$2,100
$2,100
$2,100
$2,100
On feed
$3,740
$2,910
$2,550
$2,075
Opinion The Commissioner determined petitioners' income for the years in issue on the basis of annual increases in their net worth plus their personal expenditures. No issue has been raised with respect to the use of that method, nor with respect to any item appearing on the net worth statement, save the annual increases in cattle inventory determined to have been the result of purchases made during the net worth period. While petitioners do not contend that there was no increase in their *55 cattle inventory, they do contend that a portion of that increase was due to animals born to their respective herds. They further contend that inventory increases resulting from births should not be included in a net worth statement which, with certain adjustments, attributes such annual increases to taxable income. Inasmuch as the record reveals that the net worth statement fails, at least in part, to take into account those animals which might have been born to their herds, petitioners submit that it has lost its presumptive correctness, as to this item, and that the burden of proof has thus shifted to the Commissioner. The record indicates that the annual increases in cattle attributed to petitioners' farm herd on the net worth statement, for the years 1942 through 1945, were based upon figures supplied either by petitioners or their counsel. It further indicates that those increases were due to purchases made by petitioners during each of these years. The same is true with respect to the figures which the net worth statement attributes to cattle "on feed" for each of the years 1942, 1946, 1947, and 1948. No evidence has been introduced which establishes error in these figures, *56 and they have been incorporated in our ultimate finding of fact. As to the figures for the years 1946 through 1948, attributed by the net worth statement to increases in petitioner's farm herd, the record indicates that they were based upon information supplied the Commissioner by petitioners' counsel to the effect that: "a depreciation basis would be impossible but an inventory amount reflecting a 20% increase in number of cattle and $2,100.00 monetary increase in value of inventory per year would satisfactorily reflect the replacements by heifers and bulls born each year and monetary acquisitions to replace diseased cattle or ones disposed of." Petitioners now maintain that the $2,100 figure referred, not to annual net purchases, but rather to total increases attributable to both births and purchases. We have carefully read counsel's statement, and in light of the circumstances under which it was made, and in the absence of any evidence to the contrary, have concluded the Commissioner properly treated it as representing the cost of the net acquisitions made to the farm herd during the years 1946 through 1948. We note that the increase attributed to the farm herd for the year *57 1946 is $2,200. However, the record establishes that the $2,100 figure should have been used. Thus, we have used the latter in our ultimate finding of fact for the year 1946. As to the year 1949, the Commissioner lumped both the home and away herds together, and determined a $32,380 inventory increase, all of which he attributed to purchases made during that year. The record indicates that the basis of this determination was a financial statement submitted by James Weaver to a Shippensburg bank, wherein he acknowledged ownership in 1949 of 224 head of cattle having a cost basis of $250 per head. However, the revenue agents assigned to petitioner's case admitted no attempt was made to determine how many of those 224 head were born to petitioner's herd during 1949. Moreover, on brief, the Commissioner has conceded that at least 20 of those 224 head were born to petitioners' herd during 1949, and accordingly has reduced the total herd increase from 1948 to 104 head at $250 per head, or $26,000. This concession was based on the testimony of one of the agents that he calculated that petitioners, starting in 1941 with 15 head of cattle, could not have acquired more than 100 head of cattle *58 by December 31, 1948, and therefore, of the 224 head at least 124 had to have been acquired during 1949; which, when adjusted for an inventory increase of 20 per cent due to births, resulted in purchases of at least 104 head. The principal fault with the Commissioner's present position is that there is no evidence of the manner in which the revenue agent arrived at his figure of no more than 100 head on hand as of the close of 1948. Actually, that figure seems to be the result of nothing more than a mathematical computation, which the agent admitted was a "rough calculation." Moreover, the agent first referred to the 100 head as the maximum number which could have been raised by petitioners as of the close of 1948. However, he subsequently referred to the 100 head as the maximum number which could have been acquired as of that date either by birth or by purchase. In light of these facts, we must reject the Commissioner's arguments with respect to 1949. However, on the basis of the statement of petitioners' counsel alluded to above, we have found that an inventory increase for 1949 in the net amount of $2,100 was the direct result of purchases made by petitioners during that year. *59 No issue has been made with respect to the additions to tax under section 291(a), section 294(d)(1)(A), and section 294(d)(2), and they are sustained subject to recomputation in light of our holding on the above issue. Decision will be entered under Rule 50.